```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
NIKITTA J. WINT,                            :
                            Plaintiff,      :
                                            :    **MEMORANDUM DECISION**
            - against -                     :    **AND ORDER**
                                            :
COMMISSIONER OF SOCIAL SECURITY,            :    16-cv-6250 (BMC)
                                            :
                            Defendant.      :
----------------------------------------------------------- X
```

**COGAN,** District Judge.

Plaintiff is a 29 year old woman with borderline intellectual functioning. She brings this action pursuant to 42 U.S.C. § 405(g), seeking reversal of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge ("ALJ"), that she is not disabled, as defined by the Social Security Act, and thus not entitled to receive Supplemental Security Income. Alternatively, plaintiff requests remand of this matter for further proceedings. The ALJ found that plaintiff can perform a full range of work subject to serious limitations as to complexity, stress, and consistency.

Plaintiff raises three points of error in her motion for judgment on the pleadings: (1) her condition qualifies as a listed impairment under 20 C.F.R. pt. 404, subpart P, app. 1, § 12.05D[1]; (2) the ALJ misapplied Social Security Ruling 85-15; and (3) the ALJ improperly discounted plaintiff's and her mother's credibility.

Because I find that the ALJ did not properly evaluate credibility in this case, I need not reach, and indeed believe that it would be inappropriate to reach, plaintiff's first and second points of error. Credibility is particularly important here – in fact it

---

[1] Listing 12.05 was substantially revised effective January 1, 2017. See 81 Fed. Reg. 66137 (Sept. 26, 2016). Plaintiff has not contended that her claim should be returned to the Commissioner for evaluation under the current standard.

substantially informs the outcome of plaintiff's first two points of error – because I do not think the Commissioner could seriously dispute that if the testimony of plaintiff and her mother (especially that of her mother) was accepted *in toto*, the outcome of plaintiff's claim would likely have been different. In particular, the statements and testimony of plaintiff's mother showed plaintiff's cognitive impairment to be far more severe than the ALJ found. Moreover, while the medical and behavioral evidence conflicted, there is enough in the record that could support a finding of disability if the testimony of plaintiff and her mother was accepted on its face.

In contesting plaintiff's alleged errors in this case, the Commissioner appears to recognize this. Although never expressly stated (perhaps because the ALJ did not address it), the Commissioner's brief contains an undercurrent suggesting that to the extent medical professionals found a more severe impairment than the ALJ did, the ALJ correctly rejected those opinions because they were based on "self-reporting" from plaintiff's mother rather than plaintiff. For example, the Commissioner criticizes plaintiff's reliance on her mother's testimony in support of her claim that the ALJ erred, by stating that: "Unfortunately, the ALJs at the first two hearings allowed plaintiff's mother to dominate the testimony. She would interject commentary when Plaintiff was attempting to answer a question . . . . " Similarly, the Commissioner argues that "in contrast to Dr. Dubro's examination (*during which plaintiff's mother was present*), where Plaintiff's affect was constricted and [her] mood was somewhat anxious, Dr. Georgiou's examination revealed that plaintiff's affect was of full range and her mood was neutral." (emphasis added).

I reject the subtext in the Commissioner's argument that there should be an implicit discounting of the mother's testimony, as well as any medical evaluations (like Dr. Dubro's) that relied on it. If the mother is not credible, the ALJ needed to make findings to explain why. I do not accept, for example, the Commissioner's characterization of the mother's testimony as "interfering" at the hearing. In each of plaintiff's hearings, plaintiff had difficulty answering anything but the most straightforward questions. My own view of the mother's interjections is that they were helpful to keep plaintiff on track. I might not subscribe to that view if the ALJ who heard the testimony evaluated it differently, but the lack of evaluation leaves both the Commissioner and the Court to form their own views. Neither of us is supposed to do that; the evaluation of credibility is for the ALJ, but it has to be expressed appropriately.

Substantial evidence supplied by the mother of a mentally impaired claimant presents difficult challenges. On the one hand, it is obvious that there is no source of direct evidence more probative of the claimant's functional capacity – often including, as discussed below, the claimant herself – than the claimant's mother, with whom the claimant lives, and who interacts with the claimant more than any medical professional or social worker ever could. On the other hand, it is equally obvious that there can be an explicit and implicit bias on the part of the mother that has to be considered, e.g., a desire to obtain social security benefits for her daughter, or simply a benign but reflexive, protective reaction of a parent towards a child.

Significantly, resolving these competing concerns is not something that only the ALJ undertakes; a medical professional who obtains information to do an evaluation of the claimant also has to weigh the reliability of the mother's "self-reporting," just as he

has to weigh the reliability of the claimant's self-reporting. Assessing symptom validity is an exercise that must be undertaken by physicians in the first instance and then finally determined by the Commissioner through the ALJ.

It is thus not persuasive to me when the Commissioner argues that Dr. Dubro's evaluation should be discounted because plaintiff's mother was present, as the Commissioner has offered no reason why the medical professional would be bamboozled but the ALJ was not, or why he would not simply ask the mother to step outside so he could talk to plaintiff separately if he thought it necessary. And the issue of the mother's credibility is sufficiently important that I do not think it is adequate for the Commissioner to address it in passing, or for the ALJ to have not addressed it at all.

This is particularly the case because in many, if not most, cases of cognitive impairment, self-reporting as to functional ability is not entirely reliable, and it may be even less reliable than that of the claimant's mother. Many cognitively impaired people are subjected to either criticism and/or assistance that may induce them to say they can do more than they actually can do. See Lori Frank et al.,"Patient Self-Report for Evaluating Mild Cognitive Impairment and Prodromal Alzheimer's Disease" National Center for Biotechnology Information, U.S. National Library of Medicine, (Dec. 9, 2011), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3308024/; J.L. Roberts et al., "Subjective Memory Complaints and Awareness of Memory Functioning in Mild Cognitive Impairment: A Systematic Review" National Center for Biotechnology Information, U.S. National Library of Medicine, (Aug. 13, 2009), https://www.ncbi.nlm.nih.gov/pubmed/19684399; Institute of Medicine of the National Academies, "Self-Report Measures and Symptom Validity Tests" in Psychological

Testing in the Service of Disability Determination (2015), available at https://www.nap.edu/read/21704/chapter/6#137. It is not hard to understand that if, over a long period of time, doing more results in compliments or rewards and doing less results in criticism or the additional hard work of more learning exercises, an impaired individual may be more inclined, in describing her abilities, to view herself through rose-colored glasses.

On top of this difficult evaluative consideration, cognitively impaired people, like anyone else, but often even more so, do not know what they do not know. For example, an impaired person may consider themselves as having "normal social relationships," and may answer a question from an ALJ that she has "normal social relationships," but not fully comprehend what most people consider to be normal social relationships. There are tests to determine the symptom validity of the cognitively impaired, but it does not appear that any of the professionals in this case used them.

All of these considerations seem to me very much in play on this record but the ALJ did not address them at all. The testimony of the claimant before the ALJ, even though the ALJ and her attorney (both of whom examined her) kept the questions straightforward, was to a significant extent incoherent. (For example, it took several unanswered questions by the ALJ – i.e., questions met by dead silence – for plaintiff to ultimately acknowledge that she did not understand the meaning of the word "income".) There were numerous occasions when she did not respond to questions at all, and the questioners' efforts to rephrase or reword questions often led to answers that were non-sequiturs or at least incomplete answers to the question. It was also obvious from her attorney's questions that she gave answers that were different than those she had given

him during preparation for the hearing. Consistent with my concern expressed above, she gave several answers initially that indicated an ability to perform certain functions, but when pressed for details, her functional ability was more limited than her initial unqualified statement.

In short, this is a claimant who is almost non-verbal. Either she is faking it, or she is not. If she is not, that portion of the record that finds the absence of a marked impairment in social skills is not correct. The ALJ has to answer the question – is this really someone who can barely speak? Or is she merely pretending to be?

It is not as if the ALJ did not attempt to assess credibility, and in some ways his effort was more focused than in other cases I have reviewed, but I still do not think it was adequate. First, there was no mention of the credibility of plaintiff's mother at all, and for the reasons noted above, I believe that is crucial in a case like this. Second, in finding plaintiff's claims about her inability to work incredible in light of her other testimony, the ALJ did not take into account that some of plaintiff's self-descriptions about her abilities may have been exaggerated, as suggested above. Third, the objective facts to which he referred do not seem to me in any way to cast doubt on her credibility.[2]

For example, the ALJ noted that "she was able to complete high school" with a special education diploma. As documents from the New York State Department of Education ("DOE") indicate, an Individualized Education Program ("IEP") diploma "is not a standards-based diploma and [is] not recognized in this State as equivalent to a

---

[2] The Commissioner's brief goes even further than the ALJ did in drawing inferences to show functionality. These are not persuasive. For example, the Commissioner asserts that plaintiff can manage her own money because her mother testified that plaintiff is "not a shopaholic" and can make a "$5 bill . . . last her for two weeks." But that means almost nothing considering plaintiff's mother also testified that plaintiff has no living expenses besides the cost of food, for which her mother receives food stamps.

regular high school diploma." New York State Education Department, http://www.p12.nysed.gov/specialed/publications/iepdiploma.htm (last visited Sept. 6, 2017). Such a diploma simply means that the student has met the goals, whatever they may be, that have been set for the student in her Individual Education Plan, which itself is geared towards the specific limitations that the student has. The goals of the IEP may be extremely modest based on the student's limitations. The DOE has thus stated:

> While earning an IEP diploma may be an important milestone for a student, it is a diploma that is often not accepted by employers, the military, institutions of higher education, business/trade schools or apprenticeship programs because it is not based on standardized criteria (successful completion of required courses and achievement on State assessments).

Id. Thus, to the extent the ALJ was suggesting that plaintiff's receipt of an IEP diploma indicates that she understated her functional capacity, that seems incorrect.

The ALJ next observed, as part of his assessment of plaintiff's credibility, that "she was even able to complete vocational training in child-care" and had "a vocational evaluation that indicated a capacity for working at some jobs, though further vocational training was recommended." That is a half-success story if there ever was one. The fact that plaintiff obtained a certificate from an agency that specializes in providing some training to people with disabilities is little different than her obtaining an IEP diploma. More significant is that she never obtained a single baby-sitting job as a result of her training. The only baby-sitting plaintiff has done is helping a family friend a couple of days a week at a child care service, for which she receives $30 per week. But even at that, the job was a favor to plaintiff and she was only capable of working two-and-a-half

hours a day. I thus do not see how her obtaining this certificate reflects negatively on plaintiff's credibility.

The ALJ also expressed the view that plaintiff's activities of daily living cast doubt on her credibility, specifically that she "watches television, uses a computer, manag[es] a Facebook account, and do[es] domestic tasks like light shopping." These activities, the ALJ concluded, "indicate that she has the capacity for work activities," contrary to her testimony. But the ALJ's use of these factors to diminish plaintiff's credibility cannot withstand any level of scrutiny.

"Watches television"? No more need be said about that. As to "using" a computer, the record contains few specifics. We know that plaintiff cannot shop online. We know that she has a Facebook page, but we do not know whether she set it up herself – no one asked her. We know she has "50 or 51 friends" on Facebook, but Facebook friends are different than in-person friends, of whom she could identify only one – someone she met at VESID, who she sees "once in a blue moon," a phrase she used several times but could not define. So all that we know from her Facebook use is that she clicked "Add Friend" or "Accept Friend" 50 or 51 times over some period of time. That hardly demonstrates that plaintiff has the capacity for normal social functioning. Her mother testified that she does use the computer for about an hour a day, but, again, we only know that she can point and click. I do not see how that impacts her credibility. The ability to master computer skills can be an important factor in determining the functional capacity of someone with impaired social skills. But little was done on this record to ascertain that ability.

8

As for "light shopping," let's look at what that means. She cannot go to the supermarket to buy a cartful of groceries. She can go to the neighborhood *bodega* to pick up staples, where they likely know her and hopefully accommodate her, but, even there, her mother testified that she (the mother) has to call the *bodega* from time to time to tell them that they gave plaintiff the wrong change. The mother's view, as discussed above, may be more or less credible than plaintiff's, but again, I do not see how her testimony on shopping supports the ALJ's partial rejection of plaintiff's credibility.

It is a very close question as to whether this case should be remanded for a determination of benefits only. However, because the evaluation of plaintiff's and her mother's credibility in this case is central to the weighing of the conflicting medical evidence, plaintiff's request that I find her disabled and remand the case for a benefits-only calculation is denied. See Bush v. Shalala, 94 F.3d 40, 46 (2d Cir. 1996) ("[A] decision to reverse and direct an award for benefits should be made only when . . . substantial evidence on the record as a whole indicated that [the plaintiff] is disabled and entitled to benefits.") (internal quotation marks omitted); Pereira v. Astrue, 279 F.R.D. 201, 209 (E.D.N.Y. 2010) ("[I]f the record would permit a conclusion by the Commissioner that the plaintiff is not disabled, the appropriate remedy is to remand for further proceedings.") (internal quotation marks omitted). The case is remanded to the ALJ for the purpose of conducting a rehearing and a reevaluation of the record once a new credibility determination is made.

## CONCLUSION

Plaintiff's motion for judgment on the pleadings is granted in part and denied in part. Defendant's cross-motion for judgment on the pleadings is denied. The case is remanded for further proceedings consistent with this decision.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
September 7, 2017